## MOORE *v.* MUSKEGON TRUST CO.

1. FRAUDS, STATUTE OF—PAROL AGREEMENT TO EXTEND PERIOD OF REDEMPTION.

   A parol agreement, made prior to the expiration of the period of redemption under a mortgage, whereby the period within which to redeem is extended, is enforceable in equity and not violative of the statute of frauds (3 Comp. Laws 1929, § 13411).

2. MORTGAGES—FAILURE TO REDEEM UNDER PAROL AGREEMENT TO EXTEND PERIOD OF REDEMPTION.

   Under parol agreement to extend period of redemption under a mortgage from April 1, 1934, to March 1, 1935, upon mortgagor's failure to redeem prior to later date title became absolute in mortgagee which had purchased property at foreclosure sale.

3. SPECIFIC PERFORMANCE—STATUTE OF FRAUDS—LAND CONTRACTS
   —IMPLIED AGREEMENT—CONSIDERATION.
   After expiration of period of redemption as extended by a parol
   agreement between mortgagor and mortgagee any implied
   agreement which mortgagor might have established by conduct
   of the parties for re-acquisition of the title constituted a con-
   tract of purchase which, since the right to redeem was extinct
   and any element of fraud was absent, would be unenforceable
   under the statute of frauds where it was without consideration
   (3 Comp. Laws 1929, § 13411).

4. LANDLORD AND TENANT—SPECIFIC PERFORMANCE—MORTGAGES—
   EXTENSION OF PERIOD OF REDEMPTION.
   In suit for specific performance of an alleged agreement to ex-
   tend period of redemption under a mortgage, after termina-
   tion of first agreement extending period of redemption, right
   of redemption became extinct and relation of landlord and
   tenant was established by plaintiff's occupancy of the prem-
   ises and payment of various sums of money to defendant
   which were applied towards payment of the sum parties had
   agreed was the reasonable rental value of the premises.

5. ACCORD AND SATISFACTION—ACCEPTANCE OF PARTIAL PAYMENT OF
   RENT—WAIVER.
   Acceptance by mortgagee, after expiration of extended period
   of redemption, of less than amount agreed upon with mortga-
   gor for rent of the premises did not operate as a waiver of the
   deficiency in rent.

6. LANDLORD AND TENANT—TAXES—FINDING OF COURT.
   Finding of trial court that mortgagor had agreed to pay taxes
   in addition to a stipulated sum for rent after expiration of ex-
   tended period of redemption *held*, established by evidence.

Appeal from Muskegon; Sanford (Joseph F.), J.
Submitted June 8, 1938. (Docket No. 39, Calendar
No. 40,090.) Decided October 3, 1938.

Bill by Glade E. Moore against Muskegon Trust
Company for specific performance of an oral agree-
ment extending time for redemption from fore-
closure sale and in the alternative for a money de-
cree. Cross-bill by defendant against plaintiff for

an accounting. Decree for defendant. Plaintiff appeals. Affirmed.

*Turner & Cochran,* for plaintiff.

*Arthur W. Penny,* for defendant.

CHANDLER, J. On January 1, 1928, Glade E. Moore, being the owner of certain realty located in the city of Muskegon, mortgaged the same to the Bankers Trust Company, later known as the Muskegon Trust Company, said mortgage securing 19 bonds which were held by 12 individuals. Thereafter, on December 23, 1932, the Bankers Trust Company, pursuant to its usual practice, assigned the mortgage to itself as trustee. Upon default in payment of principal, interest and taxes, the mortgage was foreclosed by advertisement and bid in by the Bankers Trust Company as trustee for the sum of $10,417.14, the sheriff's deed bearing date of April 1, 1933, placing the expiration of the period of redemption on April 1, 1934.

On March 29, 1934, two days before title to the property was to become absolute in the trust company as trustee, plaintiff, through his attorneys, directed a letter to Mr. Thurston, president of the trust company, which indicated that plaintiff intended to invoke the provisions of the emergency mortgage moratorium statute to extend the period of redemption unless some satisfactory arrangement could be made without recourse to litigation. Immediately thereafter, plaintiff discussed the possibility of a moratorium with Mr. Thurston at the latter's office, and was granted more time to meet his obligation under an oral agreement, which is the subject-matter of this dispute.

Mr. Moore testified that upon broaching the subject of starting an action in court under the moratorium statute,* Mr. Thurston replied, "It is not necessary to put a moratorium on and make expense for the bondholders." Plaintiff insists that he sought to obtain the same rights by agreement with the trust company to redeem this property that a court might have given him under the moratorium statutes. Plaintiff further testified that an agreement was reached whereby he was to pay $50 per month for the entire building as its fair rental value, that there was no talk about a month to month rental agreement, that he never agreed to pay any taxes, and that such charges were to come out of the money paid as the rental value, and, finally, that no certain time was provided to pay up in full.

On the other hand, Mr. Thurston testified that he was not granting an extension of the period within which to redeem but was simply giving Mr. Moore the right to rent the property; that the lease extended to April 1, 1935, with rental fixed at $50 per month, plus taxes and expenses incident to the upkeep of the building; that plaintiff only had the exclusive right to purchase the property until the date last mentioned; and, that if Moore had not purchased by that time, the property was to be returned to the trust company.

Directly after this oral conversation, the two versions of which are briefly set forth above, counsel for plaintiff received the following letter under date of March 30, 1934, signed by Mr. Thurston as president of defendant company:

"Your letter of March 29th received stating that you had been retained by Mr. Glade E. Moore to

* Act No. 98, Pub. Acts 1933, as amended (Comp. Laws Supp. 1933, § 14444–1 *et seq.*).—Reporter.

invoke the provisions of the emergency mortgage moratorium statute to extend the period of redemption on Lots 8 and 9, Block 169, City of Muskegon.

"Rather than subject our bondholders to the expense of litigation in this matter, we are quite agreeable, with the consent of the bondholders, to allow Mr. Moore the same rights which he would acquire under the provisions of the mortgage moratorium statute, and, accordingly if Mr. Moore will turn in to us each month an amount, which will represent the true rental value of this property, we will permit him to remain in possession and enjoyment of the real estate until March 1, 1935."

Pursuant to the agreement, plaintiff paid $50 on April 28, 1934, and made payments totaling $278 from that date to March, 1935. Actually under the arrangement, according to plaintiff's own version, $550 should have been paid, and in addition thereto he should have paid the 1934 taxes if defendant's contention is accepted. The trust company, during the time plaintiff remained in possession of the property, issued receipts for the payments made, variously labeled, "deposit on moratorium agreement," "deposit as per agreement," "deposit on account," and simply "deposit."

Defendant did not bill plaintiff for the back rental but in April, 1935, he was told that he would have to pay $70 per month on a month to month basis. Mr. Thurston testified that as long as Mr. Moore could still pay something he could repurchase this property, and that Moore was told that he would lose the property if it were sold during the course of the month. However, both parties agree that they continued in much the same manner as under the original agreement. For the next 12-month period, plaintiff paid defendant $553 or $287 less

than the agreed amount, payments ranging from $20 to $72.

In February, 1937, the parties arrived at another oral agreement whereby the trust company was to collect the rent from the tenants and charge 5 per cent. for the service. The tenants were informed of this change, and plaintiff who then occupied but a small part of the building as a tavern, agreed to contribute $20 "to boost," as he says, the monthly payments, but not as rent. This sum was paid in February and March, 1937, being evidenced by receipts containing the words "Receipt for rent" rather than the form theretofore used. The payment for May was waived when Moore informed the defendant that he was unable to obtain a renewal of his tavern license unless he paid a delinquent $58 water bill. Thereafter, although Mr. Thurston testified that the trust company desired to give Moore the first opportunity to repurchase the property, and plaintiff had made various offers from time to time which were not acceptable to the defendant, the latter, having found a purchaser in one George Dobben, sold the premises on land contract on the 1st day of June, 1937. Plaintiff instituted this action to secure specific performance of the agreement of the parties extending the period of redemption under the mortgage so long as plaintiff should pay the fair rental value in monthly instalments, and in the alternative, plaintiff prayed for an accounting if the agreement was not capable of being specifically enforced. Defendant filed a cross-bill demanding an accounting for rentals due and owing and for the removal of certain plumbing and light fixtures by plaintiff when he partially moved out of the premises upon failure to obtain a renewal of his tavern license. Defendant also demanded that

Moore be required to account for delinquent taxes which defendant says he agreed to pay in addition to the rental value.

The lower court was satisfied that plaintiff's right to redeem the property was extended until March 1, 1935, and that thereafter title in the premises became absolute in defendant, and plaintiff occupied the property under an agreement whereby he could repurchase provided he presented a plan that was acceptable to defendant. Accordingly, he entered a decree against plaintiff dismissing his bill of complaint and finding in favor of defendant for rent in arrears between April, 1934, and June, 1937. In addition to the foregoing, the lower court decreed that plaintiff must pay defendant for taxes accruing during the years 1934 and 1935. Plaintiff appeals from the decree as entered.

It seems well established that an agreement, made prior to the expiration of the period of redemption, whereby the period within which to redeem is extended, is enforceable in equity and is not violative of the statute of frauds [*] because it rests in parol. Many authorities sustaining the proposition are collected in 54 A. L. R. 1207. See, also, *Potter v. Brown,* 50 Mich. 436; *Pellston Planing Mill & Lumber Co.* v. *Van Wormer,* 198 Mich. 648; 42 C. J. p. 391, § 2160 *et seq.;* 19 R. C. L. p. 651, § 468.

Plaintiff, however, does not seek to redeem by way of payment of a lump sum. On the contrary, he expressly denies his ability to raise sufficient money to pay the indebtedness. Rather he seeks the specific performance of a parol agreement, confirmed by letter, whereby plaintiff was to have the same rights he might have acquired under the provisions

[*] See 3 Comp. Laws 1929, § 13411 (Stat. Ann. § 26.906).—REPORTER.

of the mortgage moratorium statute until March 1, 1935, which he says were continued after that date and simply obligates him to pay the fair rental value of the property until such time as the debt is liquidated by such payments. According to figures prepared by plaintiff's counsel, in which an income of $150 per month is assumed, the mortgage would be liquidated in 20 years. Yet, from April, 1934 to May, 1937, plaintiff paid but $1,456 to the trust company under the agreements, or an average of $39.35 monthly. To this sum should be added the amount of $230 which the trust company succeeded in collecting under the last agreement. Thus plaintiff seeks to have a court of equity specifically enforce a contract, which one witness testified was subject to change every month, for a period of 20 years and in effect changing an agreement to extend the period of redemption to a land contract with the time of performance indefinite and payments on the part of plaintiff optional and subject to variation.

Aside from the many manifest objections to granting specific performance of a contract such as plaintiff claims he established, it appears clear to us that the right to redeem expired on March 1, 1935, that upon said date title became absolute in defendant, and that subsequent thereto any implied agreement which plaintiff might have established by conduct of the parties for the re-acquisition of the title constituted a contract of purchase, and being oral, would be unenforceable within the statute of frauds.

Although defendant denies that any agreement existed between the parties to extend the period of redemption beyond April 1, 1934, we are convinced from the conversations which occurred immediately

prior to the date mentioned and from Mr. Thurston's letter of March 30, 1934, that the period was so extended. For how long was it extended? It is equally apparent that the agreement contemplated an extension to March 1, 1935, as plaintiff by his negotiations sought, and was granted by defendant, the same rights he might have acquired by application to the court under the provisions of the so-called mortgage moratorium statutes. See Act No. 98, Pub. Acts 1933, as amended by Act No. 20, Pub. Acts 1934 (1st Ex. Sess.). By virtue of the provisions of this law, plaintiff, in the exercise of the court's discretion, might have secured an extension of the period within which to redeem to not later than March 1, 1935. The agreement contemplated no more than this as is indicated by Mr. Thurston's letter, wherein he said:

"We are quite agreeable, with the consent of the bondholders, to allow Mr. Moore the same rights which he would acquire under the provisions of the mortgage moratorium statute, and, accordingly if Mr. Moore will turn in to us each month an amount, which will represent the true rental value of this property, we will permit him to remain in possession and enjoyment of the real estate until March 1, 1935."

Accordingly, it was agreed that plaintiff should pay the sum of $50 monthly as the reasonable rental value of the premises. In spite of plaintiff's delinquencies in the making of the monthly payments agreed upon, he was permitted to remain in possession, and although the parties conversed from time to time relative to the situation, nothing was done and the record shows no modifications of the original agreement until subsequent to April 1, 1935,

when defendant insisted that plaintiff should pay the sum of $70 monthly. The agreement, therefore, expired on March 1, 1935, and there being nothing apparent to indicate that it had been extended prior thereto in any legal manner, title became absolute in defendant on that date. The right to redeem was extinguished and plaintiff's equity, if any, was lost. This result is not affected by reason of the fact that several of the receipts issued by defendant subsequently were worded such as "deposit as per agreement." See *Van Dyke v. Kunz*, 198 Minn. 578 (270 N. W. 608). Neither is the result affected by reason of the further fact that defendant may have thought the right to redeem still existed nor because defendant's officers subsequently in conversation and letters erroneously referred to the mortgage, the bondholders, and plaintiff's equity. Likewise, we believe it to be of no significance as far as the result is concerned that plaintiff was permitted to remain in possession of the premises and that various agreements were made subsequent to March 1, 1935, relating to the amount of the payments to be made by plaintiff. The record does not indicate that defendant perpetrated a fraud upon plaintiff. And assuming that the subsequent acts relied upon by plaintiff further to extend the period of redemption established an implied agreement to this effect, it would be unenforceable as it lacked consideration and the right to redeem was then extinct.

We think the evidence established that subsequent to March 1, 1935, the relation of landlord and tenant existed between plaintiff and defendant. Plaintiff continued to occupy the premises and pay various sums of money to defendant monthly which were applied towards payment of the sum which the par-

ties had stipulated to be the reasonable rental value of the premises. In most instances the payments made under the redemption extension agreement as well as thereafter fell short of the amount agreed upon. The trial court properly allowed defendant to recover the deficiency under its cross-bill. Acceptance by defendant of a smaller sum than was due did not operate as a waiver of the deficiency. *Aston* v. *Elkow,* 279 Mich. 232.

The trial court also permitted defendant to recover taxes paid by it and which it is claimed plaintiff orally agreed to pay. Plaintiff contends there is no evidence of such an agreement. We find the evidence on the point to be in dispute and see no reason for disturbing the finding of the trial court that such an agreement existed.

The decree is affirmed, with costs to defendant.

WIEST, C. J., and BUSHNELL, SHARPE, POTTER, NORTH, and McALLISTER, JJ., concurred. BUTZEL, J., took no part in this decision.