WHITE *v.* LENAWEE COUNTY SAVINGS BANK.

1. FRAUDS, STATUTE OF—PART PERFORMANCE OF ORAL CONTRACT—
   EXTENSION OF REDEMPTION UNDER MORTGAGE.
   Expenditures by mortgagors under bank mortgage in an effort
   to clear title so that property might be mortgaged to the
   Reconstruction Finance Corporation were not such acts of
   part performance as would take an oral contract to extend
   period of redemption under bank mortgage out of the statute
   of frauds (3 Comp. Laws 1929, §§ 13411, 13413, 13415).

2. SPECIFIC PERFORMANCE—POSSESSION UNDER AN ORAL CONTRACT—
   PAYMENT OF PURCHASE PRICE—DAMAGES—CLEARING TITLE.
   The reason why taking possession under an oral contract is
   recognized as a ground for specific performance, when pay-
   ment of the purchase price is not, is that in one case there
   is no standard for the estimate of damages when the contract
   is repudiated, and in the other there is a standard that is
   definite and certain; and expenditures to clear title are with-
   in the principle of payments of purchase price rather than
   that of entry into possession.

3. FRAUDS, STATUTE OF—PART PERFORMANCE—POSSESSION UNDER
   ORAL CONTRACTS.
   Continuance of possession by mortgagors under bank mortgage
   after expiration of period of redemption from foreclosure
   was not an act of part performance of oral contract whereby
   mortgagors were to reacquire title so as to secure loan from
   Reconstruction Finance Corporation and pay proceeds there-
   of to trustees of former mortgagee's assets so as to take
   such contract out of statute of frauds (3 Comp. Laws 1929,
   §§ 13411, 13413, 13415).

4. SAME—PART PERFORMANCE—ORAL CONTRACTS.
   An act constituting part performance of an oral contract so
   as to take such contract out of the statute of frauds must be
   prejudicial to the performing party (3 Comp. Laws 1929,
   §§ 13411, 13413, 13415).

5. SPECIFIC PERFORMANCE—DISCRETIONARY NATURE OF REMEDY—ORAL
   CONTRACTS—PART PERFORMANCE.
   Specific performance is not decreed as of right by showing that
   an oral contract has been partly performed as the remedy is

---

Part performance of contract for sale of land under statute of
frauds, see 1 Restatement, Contracts, § 197.

a matter of discretion and depends on the judgment of the court after a careful examination of all the circumstances (3 Comp. Laws 1929, §§ 13411, 13413, 13415).

6. Frauds, Statute of—Equity—Part Performance of Oral Contract—Fraud.

Equity acts in case of part performance to prevent perpetration of a fraud by party who accepts benefits under a parol agreement and then seeks to resist its completion by pleading statute of frauds requiring contracts for sale of an interest in land to be in writing (3 Comp. Laws 1929, §§ 13411, 13413, 13415).

7. Specific Performance—Oral Contract to Reacquire Title After Foreclosure of Mortgage—Part Performance—Frauds, Statute of.

In suit by mortgagors under bank mortgage for specific performance of oral contract whereby plaintiffs were to reacquire title after foreclosure of mortgage in order to secure a loan from the Reconstruction Finance Corporation and pay proceeds to mortgagee, where it was mortgagors and not mortgagees who benefited by such contract and such performance thereof as was made, the doctrine of part performance so as to take case out of statute of frauds has no application (3 Comp. Laws 1929, §§ 13411, 13413, 13415).

Appeal from Lenawee; Taylor (Mark D.), J. Submitted July 15, 1941. (Docket No. 79, Calendar No. 41,710.) Decided September 2, 1941.

Bill by Ray P. White and Mildred J. White against A. J. Walper, Robert T. Smaltz, and William H. Younglove, trustees of the segregated assets of the Lenawee County Savings Bank, and others for specific performance of contract to convey lands and to enjoin summary proceedings. Bill dismissed. Plaintiffs appeal. Affirmed.

*Bourns & Bird* and *Frank J. Riley,* for plaintiffs.

*Alexander & Baldwin,* for defendants.

Butzel, J. Ray P. White and wife, plaintiffs, were owners of property fronting on two streets in Adrian, Michigan. A building used for an auto-

mobile- and body-repair shop fronted on one street, and a larger one rented to the Cooper Motor Company at $150 per month fronted on the other street. In the latter building, the first floor was occupied by the aforesaid lessee, while on the second were 10 furnished rooms, rented by plaintiffs to transients, and also living quarters occupied by plaintiffs as a home. An area between the two buildings was used for automobile parking.

On February 21, 1939, defendants Walper, Smaltz and Younglove, as trustees of the segregated assets of the Lenawee County Savings Bank, were still the holders of two mortgages against the property, and on which, respectively, were due the principal sums of $10,015 and $6,100. Further sums due for interest and unpaid taxes made the total indebtedness on these two mortgages on December 22, 1939, $21,173.79. The trustees, having foreclosed the second mortgage, bid in the property on the sale on February 21, 1939. The equity of redemption expired one year later, on February 21, 1940, but prior to this latter date, plaintiffs entered into negotiations with the trustees for a settlement of the mortgage indebtedness, which culminated in the following written offer from the trustees to plaintiffs dated February 8, 1940:

"We are to accept from you the proceeds of your R. F. C. [Reconstruction Finance Corporation] loan in the amount of $10,000 or more, and take from you a second mortgage of $2,000 or enough to make the total amount received by us in cash and the mortgage $12,000, not less than $10,000 of it being in cash. You are to raise the money from outside sources to pay all taxes.

"We presume that your loan is already under way at the R. F. C. and are therefore making this offer good for 60 days. This offer of settlement can be extended beyond that time if additional time is

necessary to complete the R. F. C. loan and if we are assured by the R. F. C. that the loan is to be made.''

The figures stated in the written offer were afterwards orally modified so that plaintiffs were to pay trustees only $8,000 in cash, proceeds of a proposed R. F. C. first mortgage loan, give trustees a second mortgage of $3,300, raise $700 in cash from outside sources and pay it to the trustee, and pay all back taxes.

On February 16, 1940, the R. F. C. Mortgage Company adopted a resolution approving a first mortgage loan of $8,000, but on numerous conditions, including approval of title and assignment to the R. F. C. Mortgage Company of the Cooper Motor Company lease and the rents accruing thereunder as additional security for the loan. This commitment was good for six months, was subsequently modified in minor details, and was extended twice, the second time to May 6, 1941. A stipulation filed in this court after the record was made up shows a third extension to November 6, 1941.

Plaintiffs negotiated directly with the R. F. C., but did employ counsel for the trustees in an effort to overcome the R. F. C.'s objections to the title. Counsel testifies that in order to make headway in getting the R. F. C. loan so that the trustees would wait, he attempted to clear the title by securing quitclaim deeds and affidavits, but the R. F. C. was not satisfied with these, and, in August, 1940, demanded that the title be quieted by decree of court. The Cooper Motor Company lease had been cancelled. The trustees had demanded that plaintiffs pay rent from August 1, 1940, at the rate of $50 per month. No bill was filed to quiet title, the rent demanded was not paid by plaintiffs, and they make no claim that they obtained any new lease like the one that

the Cooper Motor Company cancelled. Assignment of the Cooper Motor Company lease was one of the conditions precedent to the granting of the loan by the R. F. C. On September 14, 1940, the trustees conveyed title to the premises to defendant Ott for a cash consideration of $4,000 and mortgage of $7,500. Defendant Robb had an interest in this purchase, being in business with defendant Ott.

Defendants Robb and Ott claim to be *bona fide* purchasers without notice either of plaintiffs' negotiations with the trustees or of their dealing with the R. F. C. and the conditional grant of the loan by the latter. For the purposes of this opinion, we shall treat them as having had notice of plaintiffs' negotiations with the trustees.

Defendant Ott instituted summary proceedings to oust plaintiffs from possession. Thereupon plaintiffs filed the present bill in equity joining the trustees, Ott, and Robb as defendants, praying the relief of specific performance of the alleged oral agreement to permit reacquisition of title by plaintiffs against the trustees, and an injunction against the summary proceedings as against Ott.

In their bill plaintiffs make no present offer to perform on their part. In effect they claim that if, when, and as they are able to secure a loan under changed conditions from the R. F. C. with which to pay the trustees the $8,000 cash, and if, when, and as they are able to raise sufficient funds independently to pay the back taxes and the $700 to the trustees in cash, and then execute to the trustees a second mortgage for $3,300, the trustees are to sell plaintiffs the property at a loss, and until then the trustees are to carry the property without expense to plaintiffs, and with the possibility of still further loss to the trustees. We shall not further discuss

the alleged merits of the case. The record has been examined with care. The circuit judge filed no opinion, but stated that the evidence was insufficient to sustain the bill, and dismissed the same.

The technical aspect of the case is likewise unfavorable to plaintiffs. They attempt to take the alleged oral contract out of the statute of frauds (3 Comp. Laws 1929, §§ 13411, 13413 [Stat. Ann. §§ 26.906, 26.908]) by alleging part performance (3 Comp. Laws 1929, § 13415 [Stat. Ann. § 26.910]), consisting of the facts (1) that they spent about $250 in their efforts to clear title for the R. F. C., and (2) that they continued to occupy the premises without paying rent after the expiration of their equity of redemption.

As to the expenditures in the effort to clear title, they were not such acts as would take an oral contract out of the statute. The reason is thus stated in *Lamb* v. *Hinman,* 46 Mich. 112, 116, and has been repeated as recently as *Van Camp* v. *Van Camp,* 291 Mich. 688, 693, 694:

"The reason why taking possession under an oral contract is recognized as a ground for specific performance when payment of the purchase price is not, is that in one case there is no standard for the estimate of damages when the contract is repudiated, and in the other there is a standard that is definite and certain."

The expenditures to clear title are within the principle of payments of purchase price rather than that of entry into possession in this respect. We note also that the continued rent-free occupancy of the premises by plaintiffs for many months has actually more than compensated them for the expenditures they claim to have made in clearing title.

As to the continuance in possession after expiration of their equity of redemption, that was not an act of part performance such as would take an oral contract out of the statute of frauds either, since it was not unequivocally referable to the alleged contract but equally explainable by reference to their previous tenancy as redemptioners (*Dabanian* v. *Rothman,* 291 Mich. 31 [125 A. L. R. 1465]), and was not prejudicial, but on the contrary beneficial, to the plaintiffs, while an "act   *   *   *   constituting   *   *   *   part performance must be   *   *   * prejudicial to the performing party" (*Davenport* v. *Mason,* 15 Mass. 85, 93, quoted in *Dabanian* v. *Rothman, supra,* 35). For cases rejecting the claims of mortgagors holding over their periods of redemption and asserting such continued possession as part performance of alleged oral contracts to reacquire title from the foreclosure sale purchaser, see *Railsback* v. *Walke,* 81 Ind. 409; *Green* v. *Groves,* 109 Ind. 519 (10 N. E. 401); *Davis* v. *Falor,* 346 Mo. 514 (142 S. W. [2d] 76); and see, also, in connection herewith, *Moore* v. *Muskegon Trust Co.,* 286 Mich. 21. Some of the cases cited showed part payment of purchase price as well as continuance in possession after expiration of the period of redemption by the mortgagors asserting the oral contracts, but the two facts in combination no more constituted part performance than they did separately, and the courts so held.

Even if the alleged oral contract had been partly performed, however,

"Specific performance is not decreed as of right by showing that an oral contract has been partly performed. The remedy is a matter of discretion and depends on the judgment of the court after a careful examination of all the circumstances.

Equity acts in the cases of part performance to prevent the perpetration of a fraud by the party who accepts benefits under a parol agreement and then seeks to resist its completion by pleading the statute." *Policha* v. *Voss,* 292 Mich. 494, 498.

In the instant case it is not defendants, but rather plaintiffs, who have benefited by the alleged oral agreement. Where, as here, both the equities and the statute support defendant's case, the doctrine of part performance has no application.

The decree dismissing plaintiffs' bill is affirmed, with costs to defendants.

SHARPE, C. J., and BUSHNELL, BOYLES, CHANDLER, NORTH, STARR, and WIEST, JJ., concurred.