TEMBORIUS v SLATKIN

Docket No. 84225. Submitted October 3, 1986, at Detroit. Decided November 21, 1986.

Cecelia L. Temborius brought an action in the Oakland Circuit Court against Norton Slatkin, Susan Slatkin, Motor City Auto Brokers, Inc., and Bob Fruin Buick-Pontiac, Inc. Plaintiff's amended complaint alleged breach of contract, misrepresentation, violations of the Consumer Protection Act, conspiracy, negligence and breach of a bailee's duties arising from plaintiff's attempted purchase of an automobile. Plaintiff had ordered an automobile from Motor City and paid Motor City a $1,000 down payment. Motor City, consistent with past practice, then ordered the automobile from, and paid a $100 deposit to, Fruin. However, the automobile was not delivered to plaintiff by either Motor City or Fruin after plaintiff paid the $7,604.58 balance of the purchase price to Motor City. The action proceeded to trial only as to defendants Norton Slatkin and Fruin and the jury rendered a verdict and the trial court, Robert C. Anderson, J., entered a judgment in favor of plaintiff and against Fruin in the amount of $38,000. Fruin appealed.

The Court of Appeals *held:*

1. Plaintiff's amended complaint, as required by court rule, set forth the claims for relief described above and contained statements of the facts upon which she relied in stating her causes of action with specific averments that reasonably informed Fruin of the nature of the causes it was called upon to defend. The trial court therefore did not err in denying Fruin's

REFERENCES

Am Jur 2d, Conspiracy §§ 49-56.

Am Jur 2d, Contracts § 255.

Am Jur 2d, Fraud and Deceit §§ 197 *et seq.;* 220-222.

Am Jur 2d, Negligence §§ 33, 64, 65.

Am Jur 2d, New Topic Service, Consumer and Borrower Protection §§ 205 *et seq.*

Practices forbidden by state deceptive trade practices and consumer protection acts. 89 ALR3d 449.

See also the annotations in the Index to Annotations under Conspiracy; Contracts; Fraud and Deceit; Negligence.

motion to strike the complaint for vagueness and failure to state a cause of action.

2. Except for the claim for breach of a bailee's duties, on which the jury was not instructed, the record contained sufficient evidence to support a verdict in favor of plaintiff on all of the other claims.

3. The existence of a contract implied in fact between plaintiff and Fruin could have been properly deduced by the jury from evidence of a letter written by a Fruin employee to plaintiff, which impliedly promised delivery of the car to plaintiff upon her payment of the balance of the purchase price to Motor City.

4. The jury could have properly found either fraudulent misrepresentation or "innocent" misrepresentation by Fruin. There was sufficient evidence for the jury to find that Fruin misrepresented to plaintiff that the automobile would be delivered to her upon her payment to Motor City when, in fact, Fruin knew that Motor City might not pay Fruin for the car, in which case Fruin would not deliver the car to plaintiff.

5. There was sufficient evidence from which the jury could have found violations of the Consumer Protection Act as claimed by plaintiff.

6. The jury could have properly found that Fruin breached the following duties owed to plaintiff: (1) a duty to warn her that Motor City might neither return her money nor deliver her car; (2) a duty to refrain from assisting Motor City in a fraud or in perpetrating a fraud itself; and (3) a duty imposed by contract to deliver the car to plaintiff upon payment of the balance.

7. The jury could have properly found that Fruin and Motor City were involved in a conspiracy. The jury could have inferred that Fruin knew that Motor City engaged in fraudulent practices and encouraged Motor City to continue them and that Motor City and Fruin had agreed that these practices continue for the profit of both.

8. The weight of the evidence in this case supported the jury's verdict and the trial court therefore did not err in denying Fruin's motion for judgment notwithstanding the verdict.

9. The trial court made no errors when ruling on the admissibility or nonadmissibility of evidence proposed by plaintiff or Fruin.

10. Fruin failed to object to portions of the jury instructions it challenged on appeal and the Court of Appeals therefore could not consider them. However, Fruin's objection essentially

involves a request for a directed verdict, but as discussed above a directed verdict was not appropriate in this case.

11. The trial court correctly awarded plaintiff attorney fees under the provisions of the Consumer Protection Act.

12. The amount of damages awarded by the jury was reasonable under the facts of this case.

13. The trial court had the authority, under a court rule, to order Fruin to pay $500 as a sanction for obstructing discovery.

14. No explicit authority requires an award of actual attorney fees for services on appeal and the Court of Appeals declined plaintiff's request for a remand for an award of attorney fees expended in defending this appeal.

Affirmed.

1. CONTRACTS — CONTRACT IMPLIED IN FACT.

A contract is implied in fact where the intention as to it is not manifested by explicit words between the parties, but is to be gathered by implication or proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction; the existence of an implied contract usually involves a question of fact.

2. FRAUD — ACTIONS.

An action for fraudulent misrepresentation requires proof that: (1) the defendant made a material misrepresentation; (2) it was false; (3) when the defendant made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) the defendant made it with the intention that it should be acted upon by the plaintiff; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff thereby suffered injury.

3. VENDOR AND PURCHASER — CONSUMER PROTECTION ACT — MISREPRESENTATION — FAILURE TO REVEAL MATERIAL FACT.

A representation made by an automobile dealer to a purchaser that the automobile would be delivered to the purchaser upon payment to a third party, when the dealer knew that the third party would be unable to complete the transaction because of the third party's financial difficulties, constituted a violation of the Michigan Consumer Protection Act (MCL 445.903(1) subs [q],[s],[bb] and [cc]; MSA 19.418[3][1] subds [q],[s],[bb] and [cc]).

4. FRAUD — ACTIONS — INNOCENT MISREPRESENTATION.

An action for innocent misrepresentation lies where a party relying on the misrepresentation suffers a loss because of the misrepresentation and the loss of that party inures to the benefit of the party making the innocent misrepresentation.

5. Negligence — Actions.

A plaintiff, to establish a prima facie case of negligence, must prove the existence of a legal duty owed to the plaintiff by the defendant, that the defendant failed to exercise ordinary care in performing that duty, and that the plaintiff suffered damages proximately resulting from the defendant's negligence.

6. Conspiracy — Civil Conspiracy.

Civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means.

7. Conspiracy — Proof of Agreement.

A plaintiff, in maintaining an action for civil conspiracy, must prove the existence of an agreement or preconceived plan; direct proof of the agreement is not required nor is it necessary that a formal agreement be proven; it is sufficient if the circumstances, acts and conduct of the parties establish an agreement in fact; furthermore, conspiracy may be established by circumstantial evidence and may be based on inference.

*Garrat & Morris, P.C.* (by *E. Michael Morris*), for plaintiff.

*Kiefer, Allen, Cavanagh & Toohey* (by *H. Rollin Allen*), for appellant Bob Fruin Buick-Pontiac, Inc.

Before: Beasley, P.J., and J. H. Gillis and M. E. Dodge,* JJ.

Per Curiam. On December 31, 1981, plaintiff, Cecelia L. Temborius, filed this lawsuit against all the defendants herein alleging, after amendment of her complaint, breach of contract, misrepresentation, violation of the Consumer Protection Act,[1] conspiracy, negligence, and breach of a bailee's duties. Defendant Motor City Auto Brokers (hereafter Motor City) was dismissed as a party defendant, as was defendant Susan Slatkin. According

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] MCL 445.901 *et seq.;* MSA 19.418(1) *et seq.*

to the record, Norton Slatkin (hereafter Slatkin) was involved in a personal bankruptcy proceeding, but he was not dismissed as a defendant. Following a jury trial on December 3 and 4, 1984, a verdict was rendered in favor of plaintiff and against defendant Bob Fruin Buick-Pontiac, Inc. (hereafter Fruin) in the amount of $38,000, which included attorney fees. Defendant Fruin appeals as of right.

In December, 1980, plaintiff, an Illinois resident, ordered an automobile from Motor City and paid a $1,000 down payment. Motor City sent an order for the car to Fruin, along with a $100 deposit. On February 23, 1981, James Townsend, the sales manager of Fruin, sent a letter to plaintiff, informing her that the car had arrived and instructing her to "contact Motor City . . . and make arrangements to accept delivery." Plaintiff understood this to mean that she should pay the $7,604.58 balance remaining to Motor City before the car would be released to her. Townsend testified that a purpose of the letter was to induce plaintiff to pay Motor City for the vehicle. The letter also advised that there would be an additional charge of $5 per day for each day after a certain date that the car was not "picked up or paid for."

Plaintiff paid the balance, but the car was not delivered to her. On March 11, 1981, plaintiff called Townsend and was told that Slatkin was having financial difficulties, so that Townsend did not know whether plaintiff would actually receive her car or would instead get her money back. Plaintiff never received either the car or the money, and Fruin eventually sold the car to someone else. Since June, 1981, Motor City has ceased doing business, its license having been revoked by the Secretary of State.

The business relationship between Fruin and

Motor City had existed for more than four years at the time of plaintiff's transaction. In this relationship, Motor City would send an order and deposit check to Fruin, with the customer's name on it. When the car arrived from the factory, Townsend would call Motor City and then mail a letter, similar to the one sent plaintiff, to the customer. Motor City ordered approximately seventy to eighty vehicles per year from Fruin.

In May, 1980, Motor City sent ten or twelve checks to Fruin for which there were not sufficient funds. According to various witnesses, at one time Motor City owed Fruin between $40,000 and $70,-000 for cars which had been delivered based upon bad checks. There was testimony that the owner of Fruin, Robert M. Fruin, (hereafter Mr. Fruin) visited Slatkin in Southfield and threatened him with criminal prosecution if the debts were not made good. On one occasion, he took with him a friendly, but uniformed, off-duty police officer to "impress" Slatkin. In a meeting with Slatkin and Slatkin's attorney, Mr. Fruin asked Slatkin to repay the debt at a rate of $1,500 per week. Slatkin, according to his own testimony and that of his attorney, replied that he would be unable to pay at that rate without taking the funds from other consumers, meaning that he would have to use money consumers had given Motor City to pay Fruin instead of to pay for the cars ordered. Mr. Fruin, again according to two witnesses, replied that he did not care where Slatkin got the money to repay Fruin. The debt was repaid over a period of seven months. According to Townsend, Fruin continued to do business with Motor City for approximately nine to ten months after plaintiff's transaction.

Fruin argues that plaintiff's complaint failed to comply with GCR 1963, 111 and 112.2 and that,

therefore, the trial court should have granted its motions to strike for vagueness and failure to state a cause of action. The relevant provisions of Rule 111 are as follows:

> .1 Statement of Claim. A pleading which sets forth a claim for relief, whether a complaint, counterclaim, cross-claim or third-party claim, shall contain
>
> (1) a statement of the facts without repetition upon which the pleader relies in stating his cause of action with such specific averments as are necessary reasonably to inform the adverse party of the nature of the cause he is called upon to defend:
>
> \* \* \*
>
> .9 Pleading to Be Concise and Direct; Inconsistent Claims.
>
> (1) Each averment of a pleading shall be clear, concise, and direct. A pleading shall not state matters of evidence.

Plaintiff's amended complaint contains five separate counts. Count I contains a clear allegation that plaintiff suffered damages based on defendants' failure to fulfill a contract to sell a car after she had paid the purchase price. Count II contains the allegation that plaintiff suffered damages because of misrepresentations and fraud perpetrated by defendants. While the actual misrepresentations are not specified, it should be noted that paragraph 8 of the complaint, in Count I, states that defendants informed plaintiff that the vehicle was ready for delivery and goes on to say that defendants made "numerous other misrepresentations." Apparently, the complaint means to say that the statement that the vehicle was ready for delivery constituted a misrepresentation. Count III alleges that defendants violated the Consumer

Protection Act, apparently based on actions already alleged in the complaint. Count IV alleges clearly that Fruin had various duties to warn plaintiff, prevent "others" from committing fraud or violating the CPA, and refrain from assisting others in such wrongs, that it negligently breached those duties and caused plaintiff harm, that there was a course of dealing whereby Fruin knew, or should have known, that a fraud may have been taking place and, in addition or in the alternative, that there was a conspiracy between Fruin and "others" to defraud plaintiff. Count V alleged that Fruin breached its duties as a bailee.

To arrive at the above interpretation of the nature of the cause Fruin was called upon to defend, we have used nothing but the complaint itself. Obviously, the trial court found no difficulty in discerning the nature of the lawsuit from the complaint. There was no error in denying defendant's motions to strike for vagueness.

GCR 1963, 112.2 provides:

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The fraud count in plaintiff's complaint refers to "misrepresentations," and the only misrepresentation even indirectly alleged in the complaint itself is Fruin's statement that the car was ready for delivery when, in fact, plaintiff complied with its conditions and delivery was still refused. Some cases cast doubt on whether this is, on its face, sufficient to satisfy the court rule. For example,

the holding of *Lowery v Dep't of Corrections*[2] seems to be that a plaintiff must specifically allege that the defendant intended to induce him to rely on the misrepresentation. In *Lowery,* however, as in other cases where a pleading for fraud has been held to be insufficient,[3] this Court was *affirming* a trial court's decision to strike or dismiss a complaint and, further, the plaintiff never presented any evidence, even in the form of affidavits or depositions, which would tend to fill in the gaps in the complaint. In this case, on the other hand, we are asked to *reverse* the trial court's denial of a motion to strike. Further, plaintiff did present evidence at trial of Fruin's intent that she rely on its misrepresentations. Under these circumstances, we decline to permit such an alleged fault in the pleadings to be a basis for reversal.

Fruin's lengthiest argument is, in brief, that there was insufficient evidence to support a verdict for plaintiff on any of the counts in the complaint and that, therefore, the trial court should have granted one of Fruin's numerous motions for summary judgment, directed verdict, judgment notwithstanding the verdict and new trial. In addressing this argument, we will not discuss the count of breach of bailee's duty because the jury was never instructed on that issue, and so it may be presumed that it was not a basis for the verdict. Our response, however, is that there was sufficient evidence to support verdicts on the remaining counts.

Fruin acknowledges the existence of a contract, but argues that either the contract was between plaintiff and Motor City, or else that it was between Motor City and Fruin. In the first case,

---

[2] 146 Mich App 342, 359-360; 380 NW2d 99 (1985).

[3] See *League Life Ins Co v White,* 136 Mich App 150, 156; 356 NW2d 12 (1984).

Fruin argues that it was Motor City alone that breached the contract, and, in the latter case, that there was no breach because Motor City failed to fulfill a condition of the contract, namely, paying the balance to Fruin, which made Fruin's duty immediately performable. Fruin contends that in no case was there any evidence of a contract between Fruin and plaintiff. We disagree. On the contrary, there was evidence of a unilateral contract in the form of Fruin's letter to plaintiff. There was testimony that the intent of the letter was to induce plaintiff to pay the balance due to Motor City. The letter itself all but said that the car would not be released to plaintiff until she paid the balance to Motor City. The implied promise, therefore, is that Fruin would deliver the car on the condition that plaintiff pay Motor City $7,604.58. Plaintiff fulfilled that condition. Where the intention to form a contract is not explicitly manifested by words of the parties, a contract implied in fact may exist if its existence may be gathered by implication or from proper deduction from the conduct of the parties, language used or things done by them, or other pertinent circumstances attending the transaction. The existence of such a contract is usually a question of fact.[4] Such a deduction by the jury was not erroneous.

Here, the jury could find two types of misrepresentation: either fraudulent misrepresentation or "innocent" misrepresentation. Fraudulent misrepresentation, as we said in *Smart v New Hampshire Ins Co,*[5] requires proof of the following six elements:

---

[4] *Erickson v Goodell Oil Co, Inc,* 384 Mich 207, 212; 180 NW2d 798 (1970).

[5] 148 Mich App 724, 731; 384 NW2d 772 (1985), quoting *Hi-Way Motor Co v International Harvester Co,* 398 Mich 330, 336; 247 NW2d 813 (1976).

"(1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury."

An "innocent" misrepresentation is essentially the same as a fraudulent one, except that it need not be done knowingly or recklessly. To find "innocent" misrepresentation, however, the jury must find that the plaintiff's injury actually benefitted the defendant.[6] As previously discussed, there was sufficient evidence for the jury to find that Fruin fraudulently told plaintiff that her car would be released to her upon her payment to Motor City when, in fact, Fruin had no such intention and, in fact, knew that Motor City might not pay Fruin for the car for weeks or months, in which case Fruin would not release the car to plaintiff. As indicated, there was evidence that Fruin intended that plaintiff rely on this representation. There seems to be no dispute that plaintiff acted in reliance on the representation or that she suffered damages thereby. There was sufficient evidence to bring this question before the jury.

The jury was instructed on only four provisions of the CPA regarding liability. Those subsections define actionable unfair trade practices as, inter alia,

(q) Representing or implying that the subject of a consumer transaction will be provided promptly, or at a specified time, or within a reasonable time, if the merchant knows or has reason to know it will not be so provided.

[6] *Riddle v Lacey & Jones,* 135 Mich App 241, 245; 351 NW2d 916 (1984), lv den 421 Mich 852 (1985).

                    *  *  *

(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer.

                    *  *  *

(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is.

(cc) Failing to reveal facts which are material to the transaction in light of representations of fact made in a positive manner. [MCL 445.903(1); MSA 19.418(3)(1).]

Subsections (q) and (bb) track the misrepresentation counts in this particular case because the nature of the misrepresentations alleged are such that, if the evidence of misrepresentation is believed, the violations of the act must follow. The representation that the car would be delivered upon payment to Motor City, if Fruin knew otherwise, satisfies both subsections (q) and (bb) because it would cause plaintiff to believe that there were no obstacles between her and her car other than payment when, in fact, this was not true. The failure to inform plaintiff that Motor City was having financial difficulties such that it had had to use money given to it by customers for automobiles to pay old debts to Fruin would constitute a failure to reveal a material fact tending to mislead the consumer under subsection (s), and it also constitutes failure to reveal facts which are material in light of positive representations under subsection (cc). If plaintiff's evidence was believed and Fruin's disbelieved, the jury could find violations of any or all of these parts of the CPA.

To establish negligence, plaintiff must prove the existence of a legal duty which defendant owes to plaintiff, that defendant failed to exercise ordinary care in performing this duty, and that plaintiff suffered damages proximately resulting from defendant's negligence.[7] At the very least, Fruin owed a duty to warn plaintiff, when she called to complain about the nondelivery of her car, that Motor City might neither return the money to her nor deliver her car, if it had that knowledge and it was material. Certainly, Fruin owed a duty to refrain from assisting Motor City in a fraud or in perpetrating a fraud itself. If all of plaintiff's evidence was believed, then Fruin breached these duties by failing to inform plaintiff of the problem with Motor City, both before and after plaintiff called to inquire, and possibly by encouraging Motor City to engage in fraudulent activity earlier in 1980. The damages have been noted.

While Fruin is correct in its assertion that an action in tort must be supported by a breach of duty separate and distinct from the duties imposed by a contract,[8] this argument seems to us to be a red herring. The duty imposed by the contract was to release the car to plaintiff upon payment. The duties supporting negligence have to do with making the promise in the first place when there was no intent to follow through, with failing to warn plaintiff of her position, and with encouraging Motor City to engage in fraud.

Civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a

[7] *May v Parke, Davis & Co,* 142 Mich App 404, 411; 370 NW2d 371 (1985).

[8] *Nelson v Northwestern Savings & Loan Ass'n,* 146 Mich App 505, 509; 381 NW2d 757 (1985).

lawful purpose by criminal or unlawful means.[9] The agreement, or preconceived plan, to do the unlawful act is the thing which must be proved. Direct proof of agreement is not required, however, nor is it necessary that a formal agreement be proven. It is sufficient if the circumstances, acts and conduct of the parties establish an agreement in fact. Furthermore, conspiracy may be established by circumstantial evidence and may be based on inference.[10]

There was testimony of a long-standing business relationship between Fruin and Motor City for the purpose of filling orders for automobiles from out-of-state consumers. The relationship entailed ordering cars from General Motors in the customer's name, sending notice to the customer that a car was ready for delivery and actual delivery by Motor City, or sometimes Fruin, of the car to the customer. There was testimony that Mr. Fruin, in response to Slatkin's complaints that he could not repay Fruin without taking money from consumers, replied that he did not care how the money was obtained. The jury could have properly inferred that Fruin knew that Motor City engaged in fraudulent practices, profited from those practices and encouraged Motor City to continue them. They could have inferred that Motor City and Fruin had *agreed* that these practices continue for the profit of both.

Fruin also moved for judgment notwithstanding the verdict, however, arguing that the great weight of the evidence was against the verdict even if there was minimal evidence to support it.

[9] *Cousineau v Ford Motor Co,* 140 Mich App 19, 36-37; 363 NW2d 721 (1985), quoting *Fenestra, Inc v Gulf American Land Corp,* 377 Mich 565, 593; 141 NW2d 36 (1966).

[10] *Vincent v Raglin,* 114 Mich App 242, 250; 318 NW2d 629 (1982), quoting *People v Atley,* 392 Mich 298, 311; 220 NW2d 465 (1974).

The record does not support this argument. The evidence contrary to plaintiff's allegations came from Mr. Fruin and there was evidence that Mr. Fruin had testified falsely at his deposition. The weight of the evidence rested entirely on a credibility contest, which is the jury's exclusive province.

Fruin argues that the trial judge erred in overruling its numerous objections to evidence offered by plaintiff. It also argues error in the trial judge's exclusion of evidence offered by Fruin. Fruin cites no case, statute or rule of evidence in support of any of these arguments, but baldly contends that the trial court committed error. A party may not leave it to this Court to search for authority to sustain or reject its position. A statement of position without supporting citation is insufficient to bring an issue before this Court.[11]

Furthermore, under the most elementary rules of evidence, the trial court's rulings were correct. Fruin essentially objects to all testimony concerning any transactions not immediately connected with plaintiff's own transaction, including evidence of the bad checks, the normal course of dealings between Fruin, Motor City and their customers and Fruin's reactions to the checks. The counts in plaintiff's complaint included fraud, conspiracy, negligence, misrepresentation and violation of the CPA. All of these counts contained elements to which Fruin's knowledge of Motor City's prior dealings with customers, or Fruin's intention that Motor City use consumer funds for nonconsumer purposes, were crucial. Thus, the evidence to which defendant objected was clearly relevant under MRE 401 and thereby admissible under MRE 402.

---

[11] *Butler v DAIIE,* 121 Mich App 727, 737; 329 NW2d 781 (1982).

As to the evidence Fruin itself wished to introduce, much of it consisted of questions to Mr. Fruin requesting plain legal conclusions as to whether he had violated a statute or acted in accordance with a standard of care. Under MRE 701, a nonexpert witness' opinion testimony is limited to those opinions and inferences which are rationally based on the witness' own perceptions. Legal conclusions are not included. Other questions Fruin's attorney asked, which were disallowed, were essentially rephrased and answered immediately thereafter. There was no error in this connection.

Fruin argues that it is entitled to a new trial because of errors made by the trial judge in instructing the jury. We note, however, that defendant made no objection to the instructions until immediately after the jury retired to deliberate its verdict. The trial judge said that prior to giving instructions he asked counsel for comments on the jury instructions, and "I was told to go ahead." GCR 1963, 516.2 provides that a party may not assign as error the giving or failing to give an instruction unless he objects to it before the jury retires to consider the verdict. This requirement is not an arbitrary one. As the Supreme Court noted in *Moskalik v Dunn,*[12] the purpose of the rule is to prevent improper instruction in advance, or to facilitate the correction of an erroneous instruction before the verdict, thereby avoiding costly new trials.

Further, the objection defendant eventually made to the instructions was not that the law had been misstated, but rather that the trial court should have told the jury that certain counts had not been proven as a matter of law. In essence,

---

[12] 392 Mich 583, 592; 211 NW2d 313 (1974).

this was a request for a partial directed verdict, and we have already stated that a directed verdict was not appropriate in these circumstances.

Fruin challenges the awarding of attorney fees under MCL 445.911(2); MSA 19.418(11)(2), which provides that a person who suffers a loss as a result of a violation of the CPA may recover, inter alia, reasonable attorney fees. Fruin points to MCL 445.911(6); MSA 19.418(11)(6), which provides:

> If the defendant shows by a preponderance of the evidence that a violation of this act resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid the error, the amount of recovery shall be limited to actual damages.

Fruin somehow transmogrifies this language into a requirement that plaintiff must prove that defendant's violation of the CPA was wilful before attorney fees can be awarded. We decline to so hold because the language of the statute is plain, and we enforce it as written.[13] The statute places the burden of proof on defendant, not plaintiff, and requires that it prove bona fide error and maintenance of reasonable procedures, not mere lack of wilfulness. Fruin presented no evidence of bona fide error or, indeed, any error at all, and showed no procedures adapted to avoid the error. Indeed, Fruin's position was that its act was not error and, presumably, that no procedures to prevent it were required.

Fruin also argues that the amount of total damages awarded was excessive, but there is no showing to that effect. Plaintiff requested $8,604.58 for

---

[13] *Bailey v DAIIE*, 143 Mich App 223, 225; 371 NW2d 917 (1985), lv den 424 Mich 867 (1986).

the car itself, $500 for the missed rebate, $2,498.36 in expenses incurred during the litigation and as a result of the injury, and $17,794.50 in attorney fees exclusive of court time. This amounted to a total of $29,397.44. The jury was also instructed that it could award exemplary damages for the distress, vexation, insult, indignity and humiliation accompanying an injury that is intentional or wilfully inflicted. The jury initially returned a verdict of "$35,521.44 plus final attorney fees." The trial judge then instructed the jury to find a total verdict including all attorney fees, and the jury returned a total verdict of $38,000. This award was reasonable under these facts.

Fruin's final argument is that the trial court's order that Fruin pay $500 as a sanction for obstructing discovery was improperly made. Once again, Fruin makes a bare assertion without citing any statute, court rule or case law to support it. Under *Butler v DAIIE, supra,* the issue is not properly before this Court. In the face of the trial court's clear authority to award such sanctions under GCR 1963, 313.1(3), we reject Fruin's unsupported assertions.

Plaintiff has requested that we remand this case to the trial court for purposes of determining the amount of attorney fees expended in defending this appeal. Plaintiff points out that the statute permits the award of reasonable attorney fees, that the purpose of the CPA is to protect consumers, and that the award of attorney fees is effectively reduced by the expenses incurred in this appeal. While the jury found a violation of the statute sufficient for the award of attorney fees, we are not inclined to remand for determination of further attorney fees. No explicit authority requires an award of actual attorney fees for services on appeal. In some cases we have awarded

damages in extreme situations such as vexatious proceedings,[14] but generally we have only done so in cases where there was no other authority for the awarding of attorney fees.

Affirmed.

[14] See, e.g., MCL 600.2445; MSA 27A.2445; see also MCR 7.216(C).