*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JULIA E. MENDEZ,

        Plaintiff/Counterdefendant-
        Appellant,

v

GERMAIN GONZALEZ-BELLO,

        Defendant/Counterplaintiff-
        Appellee.

UNPUBLISHED
August 15, 2019

No. 344993
Kent Circuit Court
LC No. 16-010986-CH

Before: GADOLA, P.J., and MARKEY and RONAYNE KRAUSE, JJ.

PER CURIAM.

Plaintiff, Julia E. Mendez, appeals as of right the order of the trial court dismissing her claim for quiet title against defendant, Germain Gonzalez-Bello. We affirm.

## I. FACTS

This case involves a dispute over the ownership of a multi-unit home located in the city of Grand Rapids (the house). In January 2010, plaintiff and defendant began living together as a couple, and on December 21, 2011, the parties' daughter was born. On December 26, 2012, defendant purchased the house; according to plaintiff, she provided the funds for the purchase of the house but the couple agreed to title the house in defendant's name alone upon the advice of the real estate agent. The reason for this is disputed; plaintiff testified that she wanted to receive favorable tax treatment by declaring another property as her principal residence, and she believed that defendant could receive favorable tax treatment by declaring the house to be his principal residence. She testified that she believed that the owner had to live in the house for one year before renting it to qualify for the tax exemption, and for that reason, she and defendant agreed that the property would be titled in his name initially, then after one year he would convey the property to her. She also testified that she thought the primary residence requirement was a requirement imposed by HUD. By contrast, defendant testified that plaintiff was reluctant to title the house in her own name because she feared deportation. In any event, the parties do not dispute that they intentionally titled the house in defendant's name alone. Defendant testified

that the parties discussed that future real estate purchases might be titled in plaintiff's name or in both their names, but that he did not agree to convey the house to plaintiff.

The house contains four residential units. The parties lived together with their daughter in one of the units, while renting the other units. In January 2016, defendant moved out and plaintiff continued to live in the unit with the parties' daughter. Defendant thereafter mailed to plaintiff a Notice to Quit, directing plaintiff to vacate the house. Plaintiff then initiated this action by filing a complaint to quiet title. Defendant filed a counterclaim seeking to quiet title to three other properties allegedly owned by the parties and titled to plaintiff, and alleging conversion, constructive trust, and joint enterprise. Plaintiff thereafter moved for summary disposition under MCR 2.116(C)(8) and (10), and defendant moved for partial summary disposition under MCR 2.116 (C)(7) and (10). The trial court denied defendant's motion, and denied in part plaintiff's motion, granting plaintiff's motion to the extent that it dismissed defendant's counterclaim regarding one of the other three properties that were the subject of the counterclaim.

During the bench trial on the remaining claims, much of the testimony related to who had provided the money to purchase the house and the other properties. The parties provided conflicting testimony about who had earned and saved the purchase money; both parties claimed to have received money from various relatives that was then deposited in various accounts. Both parties claimed that they regularly gave money to the other party and deposited money in various bank accounts, and that these funds formed the basis of the funds used to purchase the property. Both parties also testified that they provided most or all of the money used to support the family while the couple lived together, and that the purchase money therefore was acquired due to that party's efforts to support the family.

At the conclusion of the bench trial, the trial court noted that the conflicting evidence regarding who paid for the house was not pertinent to the outcome of the case because plaintiff had not demonstrated the existence of a contract. The trial court held that in the absence of a written agreement, plaintiff was not entitled to have the house conveyed to her because an oral agreement to transfer the house was barred by the statute of frauds. The trial court entered an order dismissing plaintiff's claim for quiet title to the house, and also dismissing defendant's counterclaim regarding the remaining two properties titled to plaintiff. The trial court held that the house was to remain titled to defendant, while the two remaining properties that were the subject of defendant's counterclaim were to remain titled to plaintiff. Plaintiff moved for a new trial, and the motion was denied by the trial court. At the hearing on the motion, in response to plaintiff's request for clarification of the basis for the ruling at trial regarding the house, the trial court stated, in pertinent part:

At the trial, it became apparent that there was no way to prove an agreement. The parties could not agree on what may have been discussed or determined between them. They purchased these properties with money that may have come from one or the other or both of them, the tracking of the funds became really a difficult, if not [im]possible, exercise, and the parties titled the properties in different names, and frankly, I was unable to find by a preponderance of the evidence that there was any agreement to modify the manner in which the properties were titled when purchased, let alone that it was in

-2-

any way documented. The absence of proofs sufficient to establish an agreement, it seemed to me, defeated the plaintiff's claim, and that there was no reason to believe the parties intended anything other than to title the properties in the manner which they did, hence the ruling.

Plaintiff now appeals from the trial court's order denying her motion for new trial, and challenges the trial court's orders dismissing her complaint to quiet title to the house and ordering that that property remain titled to defendant.

## II. DISCUSSION

Plaintiff contends that the trial court erred in holding that the statute of frauds bars enforcement of the parties' oral agreement that defendant convey the house to plaintiff. Plaintiff argues that by paying the purchase price for the property, she partially performed the oral contract, which removed the transaction from the statute of frauds, and that she is therefore entitled to enforce the oral contract. We disagree.

The statute of frauds provides that certain types of agreements must be in writing and signed by the party against whom it is to be enforced to be enforceable. "The statute of frauds was designed to prevent disputes as to what the oral contract, sought to be enforced, was." *In re Rudell Estate*, 286 Mich App 391, 407; 780 NW2d 884 (2009) (quotation marks and citation omitted). The presumed goal of the statute of frauds "is to protect against fraud and perjury for transactions that the Legislature deemed so significant as to require that the transaction be memorialized in writing." *North American Brokers, LLC v Howell Public Schools*, 502 Mich 882, 893 (ZAHRA, J., dissenting). "[T]he role of the judiciary is to apply the statute of frauds as written, without second-guessing the wisdom of the Legislature." *Crown Technology Park v D & N Bank, FSB*, 242 Mich App 538, 548 n 4; 619 NW2d 66 (2000). Whether the statute of frauds bars enforcement of a purported contract presents a question of law that this Court reviews de novo. *Kloian v Domino's Pizza, LLC*, 273 Mich App 449, 457; 733 NW2d 766 (2007).

A transfer of an interest in real property is subject to the statute of frauds. *Zaher v Miotke*, 300 Mich App 132, 140; 832 NW2d 266 (2013). Michigan's statute of frauds with regards to the sale of land is encompassed in MCL 566.106 and MCL 566.108. *Lakeside Oakland Dev, LC v H & J Beef Co*, 249 Mich App 517, 524; 644 NW2d 765 (2002). MCL 566.106 provides:

> No estate or interest in lands, other than leases for a term not exceeding 1 year, nor any trust or power over or concerning lands, or in any manner relating thereto, shall hereafter be created, granted, assigned, surrendered or declared, unless by act or operation of law, or by a deed or conveyance in writing, subscribed by the party creating, granting, assigning, surrendering or declaring the same, or by some person thereunto by him lawfully authorized by writing.

Similarly, MCL 566.108 provides, in relevant part:

> Every contract for the leasing for a longer period than 1 year, or for the sale of any lands, or any interest in lands, shall be void, unless the contract, or

some note or memorandum thereof be in writing, and signed by the party by whom the lease or sale is to be made, or by some person thereunto by him lawfully authorized in writing. . . .

Thus, under MCL 566.106 and MCL 566.108, a contract for the transfer of an interest in real property must be in writing and signed by the person against whom the contract is sought to be enforced. "Simply put, therefore, a contract for the sale of land must, to survive a challenge under the statue of frauds, (1) be in writing and (2) be signed by the seller or someone lawfully authorized by the seller in writing." *Zurcher v Herveat*, 238 Mich App 267, 277; 605 NW2d 329 (2000). This Court has also stated that to comply with MCL 566.106, "a writing transferring an interest in land (other than leases not exceeding one year) must be certain and definite with regard to the parties, property, consideration, premises, and time of performance." *McFadden v Imus*, 192 Mich App 629, 633; 481 NW2d 812 (1992).

In this case, the parties agree that there was no written agreement to convey the property from defendant to plaintiff. Plaintiff argues, however, that there was a verbal agreement to do so and, by providing the funds to purchase the house, she performed her obligation under the parties' oral agreement, thereby removing the oral agreement from the statute of frauds through partial performance. Under the doctrine of partial performance, a party's performance may be sufficient to remove an agreement from the statue of frauds. Our Legislature made clear that partial performance may operate as an exception to the statute of frauds, stating in MCL 566.110 that "Nothing in this chapter [Chapter 566] contained shall be construed to abridge the powers of the court of chancery to compel the specific performance of agreements, in cases of part performance of such agreements." See *North American Brokers, LLC*, 502 Mich at 899 (ZAHRA, J., dissenting), see also *Opdyke Investment Co v Norris Grain Co*, 413 Mich 354, 365; 320 NW2d 836 (1982) ("[t]he doctrine of 'part performance' satisfying the statute is as old as the statute itself"). The doctrine of partial performance therefore provides that:

> If one party to an oral contract, in reliance upon the contract, has performed his obligation thereunder so that it would be fraud upon him to allow the other party to repudiate the contract, by interposing the statute, equity will regard the contract as removed from the operation of the statute. [*Dumas v Auto Club Ins Ass'n*, 437 Mich 521, 540; 473 NW2d 652 (1991), quoting *Guzorek v Williams*, 300 Mich 633, 638-639; 2 NW2d 796 (1942) (citations omitted).]

The doctrine of partial performance historically has been applied to contracts involving the sale of land. *Dumas*, 437 Mich at 540. But, "before a party may assert that its actions constitute sufficient part performance to remove an oral agreement from the statute of frauds, that party must first show the existence of an oral contract." *Empire Shoe Serv, Inc v Gershenson*, 62 Mich App 221, 225; 233 NW2d 237 (1975). "The contract to be enforced must be established by clear and convincing evidence." *Guzorek*, 300 Mich at 639. In addition, the partial performance must be prejudicial to the performing party. *White v Walper*, 299 Mich 109, 115; 299 NW 827 (1941).

Thus, for plaintiff in this case to succeed on the basis of partial performance, she was required to establish by clear and convincing evidence that an oral contract existed between plaintiff and defendant. A valid contract requires "(1) parties competent to contract, (2) a proper

subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 508; 885 NW2d 861 (2016). In addition, for a contract to be formed, there must be an offer, acceptance, and mutual assent, being a meeting of the minds, to all essential terms. *Kloian*, 273 Mich App at 452-453. A contract does not exist without mutual assent. *Calhoun Co v Blue Cross Blue Shield of Michigan*, 297 Mich App 1, 13; 824 NW2d 202 (2012). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Id.* (quotation marks and citations omitted). In addition, the acceptance must be unambiguous and in strict conformance with the offer for a contract to form. *Kloian*, 273 Mich App at 452-453.

In this case, plaintiff failed to establish by clear and convincing evidence that an oral contract existed between the parties. The standard of "clear and convincing" evidence is the most demanding standard applied in civil cases, and is defined as evidence that "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re Martin*, 450 Mich 204, 227; 538 NW2d 399 (1995) (quotation marks and citation omitted). At trial, plaintiff testified that she provided the purchase price for the house, that defendant agreed that the house could be titled in his name, and further agreed that someday, he would convey the house to plaintiff. The only evidence supporting this agreement is plaintiff's testimony. By contrast, defendant testified that there was no such agreement. Without more, plaintiff's testimony does not rise to the level of "clear and convincing" evidence as defined by our Supreme Court.

Moreover, the terms of the alleged oral agreement as described by plaintiff do not establish a contract. Plaintiff asserts that the terms of the oral contract between the parties was that she would pay the purchase price of $25,100, the house would be titled in defendant's name, and then someday, after one year had passed, he would convey the house to her. This agreement fails because there is no consideration and no mutuality of obligation.[1] "To have consideration there must be a bargained-for exchange," which entails "a benefit on one side, or a detriment suffered, or service done on the other." *Innovation Ventures*, 499 Mich at 508, quoting *General Motors Corp v Dep't of Treasury*, 466 Mich 231, 238; 644 NW2d 734 (2002). "Valid consideration for a contract cannot be presumed merely because two parties receive benefit from each other. Rather, a bargained-for exchange is required. The essence of consideration, therefore, is legal detriment that has been bargained for and exchanged for the promise." *Higgins v Monroe Evening News*, 404 Mich 1, 20; 272 NW2d 537 (1978) (MOODY, J. joined by WILLIAMS and COLEMAN, JJ.).

---

[1] In fact, the agreement as described by plaintiff did not require defendant to perform at any particular time. Plaintiff testified that defendant agreed to someday convey the house to her. Under these terms, defendant has not yet failed to perform on the contract because theoretically, he may yet convey the property to plaintiff "someday."

In this case, the agreement plaintiff describes has defendant acting as a temporary title holder of the property for plaintiff's benefit with no benefit to defendant. Plaintiff did not pay defendant for this service and defendant received no benefit from serving as the temporary title-holder of the property. If defendant had conveyed the property to plaintiff, thereby performing his duty under the agreement as described by plaintiff, he would have received no benefit from the agreement; he merely would have been doing her a favor by facilitating her purchase of the property. Practically speaking, it appears that the couple purchased the house while they were still a couple and intended to live in part of the house as a family while renting the other units, and so perhaps both parties thought that conducting the transaction in this manner would benefit them both with regard to taxes, HUD financing, or to avoid plaintiff being identified for deportation. But "inducements and motives" do not constitute a bargained-for exchange or legal detriment necessary to constitute consideration required to establish a valid contract. *Alibri v Detroit/Wayne Co Stadium Auth*, 254 Mich App 545, 560; 658 NW2d 167 (2003), rev'd on other grounds 470 Mich 895 (2004). Because there was no bargained-for exchange in this case, there can be no contract. *Higgins*, 404 Mich at 20.

Plaintiff also contends that even if there was not an express oral agreement that defendant would convey the house to her, there was a contract implied in fact. Again, we disagree. When parties do not explicitly manifest their intent to contract in words, the parties' intent may be implied from their conduct, language, and other circumstances of the transaction. *Temborius v Slatkin*, 157 Mich App 587, 596; 403 NW2d 821 (1986). A contract implied in fact occurs "when services are performed by one who at the time expects compensation from another who expects at the time to pay therefor." *In re Lewis*, 168 Mich App 70, 758 Mich App 70, 75; 423 NW2d 600 (1988), quoting *In re Spenger Estate*, 341 Mich 491, 493; 67 NW2d 730 (1954). To establish an implied contract, as with any other contract, plaintiff must establish the elements of consideration and mutual assent. *Mallory v Detroit*, 181 Mich app 121, 127; 449 NW2d 115 (1989). In this case, looking at the parties' conduct and the circumstances of the transaction, there is no evidence that defendant intended to convey the house to plaintiff. As discussed, the parties may have envisioned a mutually beneficial arrangement in which they owned various properties titled in one or both their names, but plaintiff failed to present evidence of mutual assent and consideration for the agreement she alleges existed.

Plaintiff also contends that the trial court erred by failing to consider which party paid for the property. This argument also is without merit. At trial, the trial court permitted both parties to introduce evidence regarding who provided the funds to purchase the house. At the conclusion of trial, the trial court discussed the conflicting testimony regarding the purchase funds, but concluded that it was not pertinent because plaintiff had failed to prove the existence of a contract between the parties.

In so concluding, the trial court correctly determined that plaintiff was required to prove the existence of a contract before partial performance of that contract could operate to remove the contract from the statute of frauds. *Guzorek*, 300 Mich at 638-639 (The doctrine of partial performance applies only if the contract sought to be enforced is established by clear and convincing evidence). The trial court therefore did not erroneously fail to base its decision on evidence regarding the funds used to purchase the property.

Affirmed.

/s/ Michael F. Gadola
/s/ Jane E. Markey
/s/ Amy Ronayne Krause